**In re Mark A. WRIGHT, et al., Debtor.**

**No. 91 B 03026.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Oct. 9, 1992.

John B. Castelli, Ottawa, IL, for debtor.

D. Patrick Mullarkey, Tax Div., Dept. of Justice, Washington, DC.

John Gierum, Trustee, Chicago, IL.

Carol DeVilo, I.R.S., Chicago, IL.

## MEMORANDUM OPINION

DAVID H. COAR, Bankruptcy Judge.

This matter comes before the .Court on the Debtor's Petition for Order to Show Cause. The Court, having conducted a hearing in this matter, and having reviewed the record before it, now rules as follows.

### FACTS

The relevant facts are generally not in dispute. Both parties agree as follows. The Debtor in this case, Mark Wright [Wright], is the sole proprietor of a trucking business. On December 28, 1990, Wright entered into a Motor Vehicle Lease Agreement [Agreement] with Norm Heinz Trucking, Inc. [Heinz]. Under the terms of this Agreement, Wright used his own equipment to haul loads which Heinz assigned to him. Heinz, in turn, paid Wright 89% of gross revenues received on the hauling jobs which Wright performed.

On January 23, 1991, in order to recover delinquent tax obligations owed by Wright,

the Internal Revenue Service [IRS] served a Notice of Levy on Heinz. The Notice of Levy instructed Heinz to pay to the IRS "all wages and salary" and "other income belonging to [Wright] that you now possess or for which you are obligated," up to the amount of $4,953.31. Between January 23, 1991, and February 12, 1991, Heinz made no payments to either Wright or to the IRS with respect to money which Heinz owed to Wright for services performed.

Effective February 12, 1991, Wright filed for protection under chapter 7 of the Bankruptcy Code.[1] Wright's bankruptcy petition listed the delinquent taxes owed to the IRS as a pre-petition debt. The petition also listed a $9,000 account receivable due from Heinz for hauling services performed prior to filing.

Wright's attorney sent two letters to the IRS concerning his bankruptcy filing. In the first letter, Wright informed the IRS that he had just filed a bankruptcy petition. In the second letter, Wright told the IRS the docket number of his bankruptcy case and reminded the IRS that the "enforcement or continuation of any act to obtain possession of property of the estate" would violate the automatic stay provision of the Bankruptcy Code. Claiming a lack of knowledge, the IRS neither admits nor denies that it received these letters. The letters were attached as exhibits to Wright's pleading, however, and the IRS asserts that the letters speak for themselves.

After Wright filed his bankruptcy petition, the IRS did nothing to prevent or discourage Heinz from making payments to the IRS pursuant to the pre-petition Notice of Levy. On or about March 5, 1991,

Heinz paid the IRS $4,953.31 in full satisfaction of the levy.

Wright alleges that the IRS' receipt of money from Heinz after the filing of the bankruptcy petition violated the automatic stay provided by § 362(a) of the Bankruptcy Code. According to Wright, the IRS had an obligation under § 362(a) either to release its levy upon learning of Wright's bankruptcy filing, or alternatively, to turn over to the bankruptcy trustee the $4,953 it received from Heinz post-petition.[2] Wright claims that he was denied the use of the funds which Heinz owed to him because of the IRS' failure to take either of these actions. Without these funds, Wright claims, he lacked sufficient capital to operate his business and was forced to turn down jobs. Wright asserts that he suffered $13,000 in lost business revenues and incurred $1,700 in attorney's fees as a result of the IRS' alleged violation of the automatic stay. Wright therefore petitions this court for an order directing the IRS to show cause why it should not be cited for contempt of court and held liable for actual and punitive damages under § 362(h) of the Bankruptcy Code, which allows an individual injured by a willful violation of the automatic stay to recover damages.

### CONCLUSIONS OF LAW

Section 362(a) of the Bankruptcy Code provides that a debtor's filing of a bankruptcy petition operates as an automatic stay of all activities on the part of creditors to enforce or collect pre-petition debts. 11 U.S.C. § 362(a). Wright contends that the IRS violated § 362(a) by failing to release its levy on his income after receiving notice

---

**1.** According to Wright, he filed his bankruptcy petition on February 7 and an order for relief was entered on February 12. However, as set forth in 11 U.S.C. § 301, a voluntary bankruptcy case is commenced by the filing of a petition and the commencement of a case constitutes an order for relief. The Court therefore surmises that Wright sent his bankruptcy petition to the clerk's office on February 7 and that it was received on February 12.

In any event, whether the order for relief was entered on February 7 or February 12 is not a material issue.

**2.** The IRS later determined that Heinz' obligation to Wright for hauling services performed as of January 23, 1991, the date on which the Notice of Levy was filed, was only $1,577.69. The IRS noted that the levy reached only those accounts receivable that Heinz owed to Wright on the date of the levy. The IRS asserted, therefore, that Heinz should have remitted only $1,577.69, rather than $4,953.31, to the IRS on March 5, 1991. The IRS claims that it has ordered the return of $3,375.62 ($4953.31 – 1577.69) to the trustee of Wright's bankruptcy estate.

that he had filed a petition for bankruptcy and/or by failing to turn over to the bankruptcy trustee the entire post-petition remittance it received from Heinz. Wright therefore asks this Court for "an order holding the Internal Revenue Service in contempt of this Court for willful violation of the automatic stay[,] and as sanctions therefore an award of compensatory damages to reimburse Mark Wright for lost revenue, an award of attorney's fees, and punitive damages." Movant's Brief in Support of Petition for Order to Show Cause [Movant's Brief], at 3.

■ Before proceeding to a disposition of this matter, the Court must first clarify the nature of Wright's action against the IRS. Wright has denominated his petition a "Petition for an Order to Show Cause," and he claims that he is seeking sanctions for the IRS' alleged contempt of court in violating the automatic stay. He bases his claim for "sanctions," however, on § 362(h) of the Bankruptcy Code, which provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). Contrary to Wright's suggestion in his prayer for relief, § 362(h) "is neither a sanction nor based on contempt of court." *In re Price*, 103 B.R. 989 (Bankr.N.D.Ill.1989); *see also In re Prairie Trunk Ry.*, 112 B.R. 924, 927 n. 2 (Bankr.N.D.Ill.1990). Instead, § 362(h) simply provides for the recovery of damages as relief for individuals injured by a creditors' willful violation of the automatic stay. In light of this fact, this Court finds that Wright's action against the IRS is in fact a motion seeking damages under § 362(h). The Court will treat it as such.

The central issue in Wright's action against the IRS is whether the Bankruptcy Code's automatic stay prohibited the IRS from receiving a post-petition remittance from Heinz based on a pre-petition levy. The IRS argues that its pre-petition levy on the account receivable which Heinz owed to Wright extinguished Wright's interest in the account and transferred ownership of the account to the IRS. The IRS therefore claims that the account was not subject to the automatic stay. Wright, on the other hand, argues that the account receivable remained Wright's property in spite of the IRS levy, and became property of the estate when Wright filed his bankruptcy petition. According to Wright, therefore, the Bankruptcy Code's automatic stay prohibited the IRS from receiving a post-petition payment on the account. The issue of whether a pre-petition IRS levy on an account receivable extinguishes the debtor's interest in the account and permits the IRS to receive post-petition payments under the levy is highly controversial, with strong legal authority existing on both sides. *Compare Cross Electric Co., Inc. v. United States*, 664 F.2d 1218 (4th Cir.1981); *In re Sigmund London*, 139 B.R. 765 (Bankr. E.D.N.Y.1992); *In re Professional Technical Services*, 71 B.R. 946 (Bankr.E.D.Mo. 1987) (pre-petition IRS levy on an account receivable effectively extinguishes the debtor's interest in the account if the amount of the levy equals or exceeds the value of the account), *with In re Anaheim Electric Motor, Inc.*, 137 B.R. 791 (Bankr. C.D.Cal.1992); *In re AIC Industries, Inc.*, 83 B.R. 774 (Bankr.D.Col.1988); *In re Suppliers, Inc.*, 41 B.R. 520 (Bankr.E.D.Ky. 1984) (debtor retains an interest in an account receivable subject to a pre-petition IRS levy, and the account becomes "property of the estate" after the bankruptcy filing).

■ The Court will not reach this controversial issue in the instant case, however, because the Court finds that Wright lacks standing to bring an action for the type of relief he is seeking. Section 362(h) provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). Thus, in order to recover damages under § 362(h), Wright must demonstrate that he has suffered actual injury as a result of the IRS's alleged violation of the automatic stay, and must relate that injury to the damages sought. This analysis is consis-

tent with the standing doctrine enunciated by the United States Supreme Court in *Allen v. Wright:* "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). The relief which Wright seeks in this case, however, is unrelated to any injury he may have suffered as a result of the IRS' conduct.

Wright claims that he was injured by the IRS' alleged violation of the automatic stay because the IRS' conduct deprived him of the use of the money Heinz owed to him, which in turn prevented Wright from taking advantage of certain business opportunities. Wright specifically states that he is not asking this Court to order the IRS to turn the money it received from Heinz over to the bankruptcy trustee. According to Wright, "[t]he damage that was done to the Debtor cannot be undone now by the return of the funds." Movant's Brief, at 11. Instead, Wright is requesting this Court to award him lost business revenues, plus attorneys' fees and punitive damages.

Any lost revenues which Wright may have suffered following the filing of his bankruptcy petition, however, cannot be attributed to the IRS' conduct. Wright's claim of damages is based on an implicit assumption that if the IRS had released its levy on Wright's income after Wright filed his bankruptcy petition, or had turned over to the bankruptcy trustee the funds it received from Heinz, then the money which Heinz owed to Wright would have become available for Wright to use in the operation of his trucking business. This assumption is erroneous. When a debtor files for bankruptcy protection under Chapter 7 of the Bankruptcy Code, an entity called the "bankruptcy estate," consisting of all of the debtor's legal and equitable interests in property as of the filing date, is created. 11 U.S.C. § 541(a). The debtor is required to turn all property of the estate over to the trustee. 11 U.S.C. § 521(4). Thus, in the instant case, if the IRS *had* released its levy or turned over the funds received from Heinz to the bankruptcy trustee, as

Wright claims the IRS had a duty to do, the money at issue would have been part of the bankruptcy estate and would not have been at Wright's disposal for use as operating capital. Wright therefore is incorrect in alleging that the IRS' conduct deprived him of funds which otherwise would have been available for his discretionary use. Wright has no standing to seek damages under § 362(h) for lost business revenues based on the IRS' alleged violation of the automatic stay.

The fact that Wright lacks standing to seek damages from the IRS for lost business revenues does not suggest that there are no circumstances under which Wright might have standing to bring an action against the IRS based on the IRS' alleged violation of the automatic stay. For example, Wright might have standing to challenge the IRS' post-petition receipt of money from Heinz if Wright were to seek recovery of the funds in question for the benefit of the bankruptcy estate rather than recovery of damages for his personal benefit. Some courts have held that a Chapter 7 debtor has standing to bring an action on behalf of the bankruptcy estate to remedy an alleged violation of the automatic stay. The court in *In re Zunich,* for example, held that a Chapter 7 debtor could bring an action under § 362(h) if the debtor agreed to turn over to the trustee any funds obtained. *In re Zunich,* 88 B.R. 721, 724 (Bankr.W.D.Pa.1988) ("We can find no reason to thwart the Debtors' actions [under § 362(h) ] when same [sic] would necessarily be brought by the Trustee"). Other courts disagree, however. *See, e.g., Matter of Lee,* 40 B.R. 123, 126 (Bankr.E.D.Mich. 1984) ("The trustee . . . and not a Chapter 7 debtor is the proper party to prosecute the stay violation.")

██ Because Wright has explicitly stated that he is not seeking to recover funds for the benefit of the bankruptcy estate, this Court will not reach the issue of whether Wright would have standing to do so. This Court does note, however, that even if Wright were to convince a court that the IRS violated the automatic stay by accepting a post-petition remittance from

Heinz, the trustee of Wright's bankruptcy estate nevertheless might not be entitled to use the funds in question without providing the IRS with "adequate protection." Under § 363(e) of the Bankruptcy Code, an entity with an interest in property of the estate may ask the bankruptcy court to require the trustee of the estate to provide adequate protection of the entity's interest before using, selling, or leasing the subject property. Even if the IRS levy did not transfer title in the account to the IRS, the IRS has a lien interest in the account. The Internal Revenue Code provides the IRS with a lien on all property belonging to a delinquent taxpayer. 26 U.S.C. § 6321. Assuming that the IRS follows proper assessment and collection procedures, its lien on the taxpayer's property arises automatically once the tax has been assessed and demand for payment has been made and refused. 26 U.S.C. § 6321; *In re Dunne Trucking, Co.*, 32 B.R. 182 (Bankr. N.D.Iowa 1983). There is nothing in the record to suggest that the IRS failed to follow proper assessment and collection procedures in this case, or that the IRS' lien on the account due from Heinz has been released or avoided.

■ In addition to the possibility that Wright might have standing to recover the funds in question for the benefit of the bankruptcy estate, Wright might have standing to seek personal damages from the IRS under § 362(h) if he were to rest his damage claim on a different basis. Although Wright cannot claim that the IRS' alleged violation of the automatic stay injured him *directly* by denying him the use of the money owed to him by Heinz, he may be able to argue that he was *indirectly* injured by the IRS' conduct through that conduct's effect on his bankruptcy estate. Assuming *arguendo* that the IRS *did* violate the automatic stay by failing to either release its levy on the account or turn the funds received from Heinz over to the bankruptcy trustee, Wright's bankruptcy estate was injured because it was denied funds to which it was entitled. An injury to a debtor's bankruptcy estate also injures the debtor to the extent that the injury impedes the administration of the debtor's bankruptcy estate or interferes with the debtor's fresh start in bankruptcy. Wright therefore might be able to recover damages from the IRS for any indirect injury to himself which may have resulted from the IRS' conduct. It is unclear, however, whether such injury would in fact be compensable under § 362(h), particularly in light of the fact that the injury could easily be remedied by requiring the IRS to turn over the funds in question to the bankruptcy estate, together with interest and attorneys' fees. In addition, even if the indirect injury were compensable under § 362(h), it is unclear how the damages from such injury could be measured.

■ Another way in which Wright might have standing to recover personal damages from the IRS under § 362(h) would be if Wright were to claim an exemption in the account receivable in question. Section 522 of the Bankruptcy Code permits a debtor to exempt certain property from the bankruptcy estate. 11 U.S.C. § 522. The purpose of the exemption provision is to foster the debtor's fresh start in bankruptcy. *In re Johnson*, 57 B.R. 635 (Bankr.N.D.Ill. 1986). Exempting property removes that property from the bankruptcy estate and allows the debtor to keep it for his or her personal use.

Exempting the account receivable from the bankruptcy estate would probably not allow Wright to permanently prevent the IRS from obtaining the funds due on the account. Section 522 places limitations on a debtor's ability to shield exempted property from liability for pre-petition tax debts. Section 522(c)(1) provides that exempted property remains liable for certain nondischargeable pre-petition tax debts. 11 U.S.C. § 522(c)(1). In addition, § 522(c)(2)(B) provides that a properly filed tax lien is unavoidable in bankruptcy; exempted property on which the IRS has properly filed a tax lien remains liable for any debt secured by that lien. 11 U.S.C. § 522(c)(2)(B); *see also In re Rench*, 129 B.R. 649 (Bankr.D.Kan.1991); *Matter of Lassiter*, 104 B.R. 119 (Bankr.S.D.Iowa 1989); *In re Gerulis*, 56 B.R. 283 (Bankr. D.Minn.1985). Thus, if Wright's tax debt

to the IRS falls within one of the categories of nondischargeability enumerated in § 522(c)(1), or if the IRS' lien against Wright's property was properly filed in accordance with the provisions of 26 U.S.C. § 6323 (which sets forth procedures for perfecting an IRS tax lien by filing) then the IRS would be able to collect Wright's delinquent tax debt from the proceeds of the account receivable after the conclusion of Wright's bankruptcy case, even if Wright had exempted the account from the bankruptcy estate.

There is a possibility, however, that if Wright were to claim an exemption in the account receivable, he would be entitled to hold the funds in question for use in operating his trucking business during the pendency of the bankruptcy proceeding, in spite of the fact that the funds would still be liable for the pre-petition tax debt after the conclusion of the case. Wright's assertion that the IRS' post-petition receipt of the funds deprived him of operating capital and caused him to suffer lost business revenues might then be a valid argument. Some cases hold that a debtor may claim property exempt from the bankruptcy estate even if the property is subject to an unavoidable lien such as a properly filed tax lien. *See, e.g., Lassiter,* 104 B.R. at 122 ("[C]oncluding that such tax liens cannot be avoided does not equate with concluding that the debtor may not still claim proper exemptions under section 522(b). Indeed, section 522(c) simply does not obviate the debtor's right to claim exemptions."); *In re Chesanow,* 25 B.R. 228, 230 (Bankr.D.Conn.1982) (holding that a debtor may claim an exemption in property on which unavoidable liens exceed the fair market value of the property). This hold-

ing suggests that a debtor who claims an exemption in property which is subject to an unavoidable lien may keep the property for personal use until the conclusion of the bankruptcy case. Although the unavoidable lien will survive the bankruptcy case, the holder of the lien is stayed under § 362(a)(5) of the Bankruptcy Code from enforcing the lien against the debtor's exempt property during the pendency of the case, assuming that the lien secures a prepetition debt.[3,4]

On the other hand, other cases suggest that a debtor is not entitled to hold exempt property for personal use if the property is encumbered by a federal tax lien. In *In re Hebermehl,* 132 B.R. 651 (Bankr.D.Colo. 1991), for example, a Chapter 7 debtor claimed an exemption in certain pre-petition wages. The court held that because the IRS had a lien interest in the exempted wages, the funds were to be turned over to the IRS. *Hebermehl,* 132 B.R. at 656–57.

In *Davenport v. United States,* 136 B.R. 125 (Bankr.W.D.Ky.1991), the court also suggested that property subject to an IRS lien could not be exempted. In the *Davenport* case, the IRS had seized and sold a Chapter 7 debtor's residence prior to the filing of her bankruptcy petition. Upon filing, the debtor claimed a homestead exemption in the proceeds of the sale and sought to avoid the IRS' lien on the proceeds. The court held that § 522(c)(2)(B) prevented the debtor from avoiding the IRS lien on the exempted property. The court then stated that "[t]he proceeds are subject to a valid tax lien under federal law and *may not be exempted under Title 11 U.S.C. Section 522." Davenport,* 136 B.R. at 128 (emphasis added). The court in *In*

---

**3.** Section 362(a)(5) provides that the filing of the debtor's bankruptcy petition operates as a stay of:

> any action to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(5).

**4.** Admittedly, the automatic stay does not completely bar post-petition actions by creditors to enforce liens which secure pre-petition debts. Section 362(d) of the Bankruptcy Code provides

that a party in interest may request the bankruptcy court to grant it relief from the automatic stay if the party's interest in property of the estate or property of the debtor is not adequately protected in the bankruptcy case. Thus, if the IRS' lien against the account receivable due from Heinz is unavoidable under § 522(c)(2)(B), the IRS might be able to obtain relief from the automatic stay and enforce the lien before the conclusion of the bankruptcy case, regardless of whether Wright has declared an exemption in the account.

*re Mills,* 37 B.R. 832 (Bankr.E.D.Tenn. 1984), used virtually identical language in holding that Chapter 7 debtors could not avoid a pre-petition federal tax lien and levy on insurance proceeds from the destruction of their home even though the proceeds were ordinarily exemptible under state law. *See Mills,* 37 B.R. at 836 ("[T]he proceeds remain subject to a valid tax lien under federal law and may consequently not be exempted under 11 U.S.C.A. § 522 (1979)....").[5]

The legislative history of § 522 of the Bankruptcy Code appears to support the position that property which is entirely subject to an unavoidable lien may not be exempted under § 522. The legislative history states as follows:

> Property may be exempted even if it is subject to a lien, but only the unencumbered portion of the property is to be counted in computing the "value" of the property for purposes of exemption. Thus, for example, a residence worth $30,000 with a mortgage of $25,000 will be exemptible to the extent of $5,000.... The remaining value will be dealt with in the bankruptcy case as is any interest in property that is subject to a lien.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess., at 360–61 (1977).

Similarly, the language and legislative history of § 522(f) of the Bankruptcy Code indicate that unavoidable liens interfere with a debtor's ability to exempt property from the bankruptcy estate. Section 522(f) permits the debtor to avoid certain liens on exempt property. The legislative history describes the function of § 522(f) as follows:

> Subsection (f) protects the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. The debtor may avoid a judicial lien on any property to the extent that the property *could have been exempted in the absence of the lien....*

H.R.Rep. No. 95–595, 95th Cong., 1st Sess., at 362 (1977) (emphasis added). The emphasized language suggests that a debtor is not able to exempt property subject to a lien without first avoiding the lien.

Again, because Wright has not claimed an exemption in the account receivable at issue in this case, this Court does not reach the issue of whether he would be entitled to use the funds due on the account to operate his trucking business during the pendency of this case if he were to claim such an exemption. The Court therefore does not rule on whether Wright would have standing to challenge the IRS' post-petition receipt of funds from Heinz if he were to claim an exemption in the account.

In conclusion, although there are several ways in which Wright might be able to gain standing to challenge the IRS' conduct in the instant case, Wright has not explored any of those possibilities. Wright does not seek recovery on behalf of the bankruptcy estate and does not seek indirect damages based on injury caused by the IRS to the bankruptcy estate. In addition, Wright has not claimed an exemption in the account receivable at issue in this case. The debtor's motion for damages under § 362(h) is therefore denied for lack of standing. An appropriate order will follow.

### ORDER

For the reasons set forth in the Memorandum Opinion of even date herewith, **IT IS HEREBY ORDERED** that the Debtor's Petition for Order to Show Cause is DENIED.

---

**5.** Neither the *Davenport* court nor the *Mills* court explained why the fact that the IRS lien was unavoidable necessarily implied that the property subject to the lien was not exemptible under § 522 of the Bankruptcy Code.